# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 14, 2008

136697

WILLIAM JEFFREY SMITH,
   Plaintiff-Appellant,

v

BETTY LEE SMITH a/k/a
BETTY LEE JENKINS,
   Defendant-Appellee.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 136697
COA: 273547
Kent CC: 98-004557-DM

On order of the Court, the application for leave to appeal the March 18, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CORRIGAN, J. (*dissenting*.)

I would grant leave to appeal because I believe that the test for "cohabitation" that the Court of Appeals adopted emphasizes definitions of cohabitation that do not square with the contemporary living conditions of cohabiting couples. Because a majority of American couples now cohabit before marriage, the definitions and standards we employ pose questions of jurisprudential significance in cases where the parties have failed to define their terms. Moreover, the Court of Appeals opinion is too uncertain. It leaves too much room for litigation over the essential features of cohabitation that would terminate spousal support obligations.

I note preliminarily that a great deal of time and expense could be saved in post-judgment proceedings if the parties would only define their terms. We construe judgments of divorce like contracts. *Beason v Beason*, 435 Mich 791, 798-799 n 3 (1990). By defining terms such as "cohabitation," parties ensure that courts will construe the language used in a manner that comports with the parties' understanding of their agreement.

I. Underlying Facts and Procedural History

The parties' 1999 judgment of divorce obligates plaintiff ex-husband to pay defendant ex-wife $3,500 a month in spousal support. That obligation terminates "upon such time as the Defendant cohabitates with a non-related male." The term cohabitation was not defined in the judgment. In January 2005, plaintiff moved to terminate spousal support, alleging that defendant had been cohabiting with her partner. The trial court held an evidentiary hearing, during which defendant's partner testified that he and defendant had been in a committed relationship since December 2002. Although the couple had plans to marry, defendant told her partner that she did not want to marry or live together until her spousal support ends when her youngest child reaches the age of 18. The couple also does not share bank accounts or credit cards. Evidence was also adduced that defendant's partner used her address to receive mail from his bank and documents pertaining to his divorce. Although defendant's partner claimed that he moved into his ex-wife's home in May 2004, when he returned to Michigan from Georgia, and lived there until April 2005, his ex-wife testified that he never lived with her during that time. He also claimed that he began staying at the home he formerly shared with his ex-wife approximately three days a week beginning in April 2005, but his ex-wife observed that the minimal utility bills from their former home during that period were inconsistent with his claim. After the evidentiary hearing, the trial court identified a 1983 test for cohabitation from Ohio, found that defendant and her partner were not cohabiting, and denied plaintiff relief. On appeal, the Court of Appeals affirmed.

The Court of Appeals initially cited the three-part Ohio test used by the trial court:

> "First, there must be an actual living together, that is, the man and woman must reside together in the same home or apartment. Secondly, such a living together must be of a sustained duration. Third, shared expenses with respect to financing the residence (i.e., rent or mortgage payments) and incidental day-to-day expenses (e.g., groceries) are the principal relevant considerations." [*Smith v Smith*, 278 Mich App 198, 202; 748 NW2d 258 (2008), citing *Birthelmer v Birthelmer*, unpublished opinion of the Court of Appeals of Ohio for the Sixth District, issued July 15, 1983 (Docket No. L-83-046), 1983 WL 6869, *4, as affirmed and applied in *Dickerson v Dickerson*, 87 Ohio App 3d 848 (1993), and *Moell v Moell*, 98 Ohio App 3d 748 (1994).]

It also stated that "[c]ohabitation requires more than briefly living together or regularly engaging in sexual activity. Pursuant to the dictionary definition of cohabitation, the couple must be 'living together . . . as partners in life,' or 'dwelling together . . . in the manner of husband and wife.'" *Smith*, *supra* at 202-203.

II. Objections to the Court of Appeals Analysis

The Court of Appeals ultimately adopted a totality of the circumstances test and stated that no one factor was dispositive. *Smith*, *supra* at 203-204. Nonetheless, its apparent endorsement of the Ohio test raises doubts about the standard it articulates. Proof of shared expenses, sustained duration, and a marriage-like commitment are all potentially relevant factors, but they are *not* the sine qua non in determining whether cohabitation exists. Nor do I believe that these factors amount to the "principal relevant considerations," *id*. at 202, in determining whether a couple is cohabiting.

Many dictionary definitions include the analogy to marriage that our Court of Appeals cited, see, e.g., Merriam Webster's Online Dictionary (11th ed) ("to live together as or as if a married couple"); Webster's New World Law Dictionary ("to live together as husband and wife, esp. when not married"); Law.com Dictionary ("[l]iving together in the same residence, generally either as husband and wife or for an extended period of time as if the parties were married"). Others, however, define cohabitation as merely living together in a sexual or intimate relationship, see, e.g., Cambridge Dictionary of American English ("(esp. of a man and woman who are not married) the act of living together"); The Online Plain Text English Dictionary ("[t]he living together of a man and woman in a supposed sexual relationship"); Webster's Revised Unabridged Dictionary (1913 ed) (same); Wiktionary ("[a]n emotional and physical intimate relationship which includes a common living place and which exists without legal or religious sanction"). I believe that the latter definitions provide a more accurate reflection of contemporary cohabiting arrangements.

Recent social science research suggests that the commitments of cohabiting couples are *not* equivalent to those of married couples. On the contrary, "the behaviors, understandings, and attitudes of cohabitants typically differ dramatically from those of married couples." Garrison, Marriage Matters: What's Wrong with the ALI's Domestic Partnership Proposal, Reconceiving the Family, Critique on the American Law Institute's Principles of the Law on Family Dissolution (New York: Cambridge University Press, 2006), p 307. In fact, "cohabitants overwhelmingly see cohabitation as a substitute for being single, not for being married." *Id*. at 310. Moreover, Professor Garrison argues that cohabitants "do not typically follow the relational norms associated with marriage": they are "much less likely than married couples to have children together, to pool their resources, to feel secure and unconflicted in their relationships, to value commitment, or to express commitment to their partners." *Id*. at 308-309 (footnotes omitted). A test that essentially equates cohabitation with common-law marriage fails to account for the significant differences between married and cohabiting couples.

Our survey of out-of-state caselaw reveals that many cases, like those cited by our Court of Appeals, define "cohabitation" in a manner that does not reflect the current reality, as documented by the social science research mentioned above. These cases view cohabitation as a substitute for marriage, and inappropriately emphasize the financial arrangements and duration of the new relationship. See, e.g., *Rose v Csapo*, 359 NJ

Super 53, 59, 62 (2002); *Pellegrin v Pellegrin*, 31 Va App 753, 767 (2000); *Konzelman v Konzelman*, 158 NJ 185, 202; 729 A 2d 7 (1999); *Sanders v Burgard*, 715 So 2d 808, 811-812 (Ala Civ App, 1998); *Gordon v Gordon*, 342 Md 294, 308-310 (1996); *Moell v Moell*, *supra* at 883-884.

Some courts, however, have recognized that proof of shared expenses should not be a controlling factor. In *In re Marriage of Edwards*, 73 Or App 272, 279-280 (1985), the Oregon Court of Appeals "decline[d] to adopt [the ex-]wife's suggestion that financial benefit to the supported spouse that permanently affects the need for the decreed spousal support is a prerequisite to a finding of cohabitation." It agreed with the trial court that the ex-wife was cohabiting, even though the couple had kept their finances separate. *Id*. at 275, 279. Similarly, in *Bell v Bell*, 393 Mass 20, 22-23 (1984), the Supreme Judicial Court of Massachusetts concluded that the ex-wife was living with a man "so as to give the outward appearance of marriage," and ordered the termination of alimony payments, even though the two maintained separate bank accounts and never comingled any assets.

Moreover, New York's highest court very recently reversed the finding of the intermediate appellate court that "cohabitation" had a plain meaning under New York caselaw that contemplated changed economic circumstances and required shared finances. The majority held that the term was ambiguous as used in the parties' settlement agreement because neither New York caselaw nor dictionary definitions revealed a plain meaning, and courts of other states had not uniformly defined the term. *Graev v Graev*, ____ NY2d _____ (2008), 2008 WL 4620698, *4. The dissenting judge disagreed because he concluded that the inclusion of a specific period rendered the cohabitation provision unambiguous (the agreement provided that the ex-husband's maintenance obligation would terminate in the event of the ex-wife's cohabitation with an unrelated adult for a period of 60 "substantially consecutive" days). *Graev*, *supra* 2008 WL at *1, 6 (Graffeo, J., dissenting). Significantly, the majority and dissent agreed that financial interdependence is *not* a sine qua non of cohabitation. The dissent stated:

> Today, as a Court, we unanimously reject the rule that economic interdependence is a *sine qua non* of cohabitation. Aside from the textual and contractual considerations, that rule makes little sense practically because a party receiving maintenance can easily evade the consequence of a termination provision and receive more than the benefit of his or her bargain. Mrs. Graev and M.P., for example, would be free to continue their relationship in its current form indefinitely without violating the termination provision—they could be together 24 hours a day and sleep together every night for years—but as long as they maintain separate bank accounts and do not share expenses, they would not be cohabitating under the economic unit concept. This is not how a cohabitation clause is

supposed to work; nor is it what other parties anticipate when including similar cohabitation clauses in their agreements. [*Id.* at *8 (Graffeo, J., dissenting).]

The facts of this case are somewhat similar to the hypothetical situation Judge Graffeo describes. Defendant and her partner have decided to postpone marriage until her spousal support automatically expires. Defendant's partner claims to have resided with his ex-wife, then at least part-time at his former marital home, rather than with defendant, but his ex-wife's testimony about the mailing address he used and the minimal utility bills suggest that these claims were a further attempt to avoid triggering the termination provision in the parties' judgment of divorce. I share Judge Graffeo's view and the view of the *Graev* majority that a test that focuses primarily on the degree of the parties' financial interdependence does not fully capture the reality of "cohabitation" in cases like this.

I would grant leave to appeal to clarify that no single factor is dispositive under a totality of the circumstances test for cohabitation. The primary goal of the finder of fact should be to distinguish between dating relationships and cohabitation by first considering the extent to which the parties share a common residence. Courts should thus consider such factors as whether each party has keys to the residence, keeps personal items there, and uses it as a mailing address; whether the parties share household duties; and the amount of time each party spends at any separate residence. Second, courts should consider the extent to which the parties have an intimate relationship or engage in sexual relations; they need not inquire whether the couple's commitment to one another resembles a marriage. The social science data show otherwise.

Third, while courts may consider the parties' financial situation, including shared expenses and joint accounts, I would clarify that sharing expenses is not controlling. As Judge Graffeo notes in his dissent, financial interdependence is not the "sine qua non" of cohabitation. It is possible that one cohabiting party would pay all the expenses. I would also emphasize that the length of the parties' relationship is not dispositive.

In short, I believe that the problem posed by this case is jurisprudentially significant. I would grant leave to appeal to explore the parameters of an appropriate test for cohabitation.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 14, 2008

*Corbin R. Davis*
Clerk

p1110