*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW LEE RENO,

        Plaintiff-Appellee,

v

JILL MARIE BOGGESS, formerly known as JILL MARIE RENO,

        Defendant-Appellant.

UNPUBLISHED
October 24, 2019

No. 347805
Otsego Circuit Court
Family Division
LC No. 12-014598-DM

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right an order granting primary physical custody of the parties' minor child to plaintiff and granting parenting time to defendant according to a standard parenting-time schedule. We affirm.

## I. FACTS

The parties were divorced in 2013. From 2012 to 2016, plaintiff lived in West Virginia. While defendant was initially given primary physical custody of the child, the parties reached an agreement where plaintiff had parenting time on an alternating two-week basis. In March 2016, following a motion to change the child's custody, the parties agreed to share joint physical and legal custody and to alternate parenting time on a weekly basis if both parties lived in Otsego County. Plaintiff moved to Otsego County. In October 2017, the child disclosed that another child in defendant's home had perpetrated criminal conduct against him. Plaintiff moved the trial court for sole physical custody on the basis of the criminal conduct, and defendant moved for sole physical custody on the basis of plaintiff's work schedule.

Following three days of custody hearings, the trial court determined that the criminal conduct, defendant's moves and job changes, and plaintiff's moves and work schedule warranted revisiting the child's custody. After determining that the child had an established custodial environment with both parents and considering the best-interest factors, the trial court determined that clear and convincing evidence supported granting plaintiff primary physical custody and defendant parenting time according to a standard parenting-time schedule.

-1-

## II. STANDARDS OF REVIEW

"This Court reviews a trial court's determination regarding whether a party has demonstrated a proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). This Court reviews the trial court's findings to determine whether the evidence clearly preponderates in the other direction. *Id*. This Court reviews de novo questions of law. *Id*. This Court will not reverse the trial court's custody decision unless the court made factual findings against the great weight of the evidence, committed a palpable abuse of discretion, or made "a clear legal error on a major issue." MCL 722.28.

## III. CHANGE OF CIRCUMSTANCES

Defendant argues that the trial court erred by finding that the circumstances in this case warranted revisiting the child's custody. We conclude that the trial court's changed-circumstances finding was not against the great weight of the evidence.

To minimize unwarranted and disruptive changes in children's custody, a trial court may only modify children's custody if the moving party first establishes a proper cause or a change of circumstances. *Corporan*, 282 Mich App at 603. The purpose of this framework is to "erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks and citation omitted). A change of circumstances warrants modifying a child's custodial environment only if, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. Normal life changes are not sufficient. *Id*.

As an initial matter, we reject defendant's assertion that a parent's move or job change cannot constitute a change of circumstances. A party may not take a position before this Court that is contrary to a position the party took before a lower court. *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006). Defendant moved to change the child's custody on the basis that plaintiff's job changes and moves were a change of circumstances. Defendant may not argue the opposite position on appeal.

Defendant also argues that the trial court erred by finding that criminal conduct warranted revisiting the child's custody because there was no evidence that the child knew that defendant was arrested and convicted of a drug-related charge in 2015. Defendant's argument misinterprets the trial court's decision.

This Court need not consider an issue that was not the basis of the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Courts should interpret the terms in a trial court's judgment in the same manner as courts interpret contracts. *Smith v Smith*, 278 Mich App 198, 200; 748 NW2d 258 (2008). When interpreting contracts, this Court considers terms reasonably and in context. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

In this case, the trial court found that plaintiff's motion to change custody was justified because of "the criminal charge and its aftermath." Plaintiff had moved to change the child's custody in part because of criminal conduct that was perpetrated against the child by another child, and he reiterated these facts during his closing argument. The other child was ultimately criminally charged for the conduct, and extensive trial testimony concerned the conduct and its effects on the child. Considering the trial court's finding in context, we conclude that defendant is mistaken about which criminal conduct the trial court's decision referenced.

We conclude that the trial court's findings regarding changed circumstances were not against the great weight of the evidence. The child's counselor testified that criminal conduct may affect a child for the rest of his life. Additionally, plaintiff had previously lived in West Virginia but now lived in Michigan. Plaintiff also worked 28 consecutive days out of the state, followed by 14 consecutive days off work. We are not convinced that the evidence clearly preponderates against the trial court's finding because each of these circumstances has the ability to have a significant effect on the child's well-being.

## IV. BEST-INTEREST FACTORS

Defendant challenges specific best-interest findings, arguing that the trial court's findings were either based on clear legal error or were against the great weight of the evidence. We conclude that the trial court's findings were not against the great weight of the evidence and it did not make errors of law.

The trial court must make its determination about a child's custody on the basis of the child's best interests. MCL 722.25(1). To determine what is in the child's best interests, the trial court must consider the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

First, defendant argues that the trial court improperly based its finding regarding the parties' capacity to provide for the child on the income of the parties' respective homes. We disagree.

The trial court should not give excessive weight to the parties' economic circumstances when determining a child's best interests. *Dempsey v Dempsey*, 409 Mich 495, 497-498; 296 NW2d 813 (1980). In this case, plaintiff had worked as an oil rig supervisor for five years, and he testified that he had a gross income of about $180,000 a year. Defendant testified that she had worked full-time at Applebee's for two and a half years, but she had reduced her hours to 6 to 10 hours a week to open a painting business. While defendant testified during the September hearing that she worked at the business regularly, in November, defendant testified that the business did not have any customers, and she was again working full-time at Applebee's.

The trial court in this case found that this factor favored plaintiff. Specifically, plaintiff had been steadily employed for years and made more than $140,000 a year. The trial court considered defendant's lesser income, but also recognized that it could be remedied by child support. The trial court also recognized that she moved frequently between jobs and had a variable income and stated that, regardless of income, the main factor supporting its custody decision was defendant's instability, not defendant's income. We conclude that the evidence in this case does not clearly preponderate against the trial court's findings. We are also not convinced that the trial court erred or that its findings were against the great weight of the evidence.

Second, defendant argues that the trial court's finding regarding the length of time the child had lived in a stable environment was against the great weight of the evidence because the acceptability of a party's housing is not an appropriate consideration. Defendant's argument is contrary to the plain language of MCL 722.23(d). The trial court is explicitly required to consider "[t]he length of time the child has lived in a *stable, satisfactory* environment . . . ." MCL 722.23(e) (emphasis added). Accordingly, it was appropriate for the trial court to consider whether defendant's housing was appropriate.

Third, defendant argues that this finding was against the great weight of the evidence because she did not actually live in a pole barn, as alleged. We disagree.

This Court gives regard to the special opportunity of the trial court to judge the credibility of the witnesses that appeared before it. MCR 2.613(C). In a custody matter, this Court defers to the trial court's findings of credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). In this case, two Children's Protective Services (CPS) workers testified about defendant's housing. The first CPS worker testified that he investigated an allegation that defendant's living arrangement with her father was unsuitable because the house was too small. He testified that defendant rectified the situation by moving into her own housing. The second CPS worker testified that, on a different occasion, she investigated an allegation that defendant was living in a pole barn. The worker substantiated the allegation on the basis of the child's forensic interviews, a Michigan State Police wellness check on the child's infant sibling, and another worker's visit to the pole barn. This testimony is not negated by testimony that defendant lived with her mother during this period, and that the worker did not herself visit defendant at the pole barn. We are not convinced that the evidence clearly preponderated against the trial court's finding.

Additionally, the trial court also supported its finding that this factor favored plaintiff on the basis of defendant's frequent moves and indications that defendant's recent housing stability may not continue. While defendant testified that she had lived at her present home for almost two years, defendant demonstrated frequent moves before that time.

Fourth, defendant argues that the trial court improperly penalized defendant under factor (e) for not having a partner. This is a mischaracterization of the trial court's findings, which were not against the great weight of the evidence.

In this case, plaintiff and his wife had been in a relationship since September 2012, living together since December 2012, and married since October 2017. The trial court found that plaintiff had remarried and his wife provided a beneficial impact on the child's stability. Defendant, on the other hand, had lived in different locations with three partners—one during two discrete periods—as well as each of her parents. Most recently, defendant lived with her sister and her sister's infant child. Defendant was also both married and divorced during the custody proceedings. The composition of her home thus changed frequently, which did not demonstrate stability. We conclude that the trial court did not penalize defendant for her marital status. Rather, it recognized that plaintiff had provided a consistent family unit while defendant did not. We are not convinced that the evidence clearly preponderated against the trial court's finding.

Fifth, defendant challenges the trial court's considerations under factor (*l*), which concerns other factors that may affect the child's best interests. We reject defendant's argument that the trial court did not consider plaintiff's unusual work schedule because the trial court explicitly considered that plaintiff's job frequently required him to spend time out of state and required him to be frequently away from home.

We also reject defendant's argument that the trial court merely reiterated previous factors in its other-factors consideration. The best-interest factors "have some natural overlap." *Fletcher v Fletcher (After Remand)*, 229 Mich App 19, 24; 581 NW2d 11 (1998). The trial court may consider evidence that is relevant under one factor to be relevant under another separate factor. *Id*. at 24-25. In this case, the trial court's other-factors findings concerned defendant's

significant drug problem, which it did not address elsewhere in its opinion. To the extent that the trial court's findings did touch on facts it had previously considered, it considered these facts in a new context. Specifically, the trial court noted that defendant's home was unstable because she had married multiple times, the last marriage ended fairly quickly, and she had frequent employment changes. The trial court considered these facts to support a finding that defendant's life was generally unstable. We conclude that the trial court did not commit clear legal error because it did not simply use "other factors" to double-count factors it had previously considered.

## V. PARENTING TIME

Defendant argues that the trial court erred by failing to tailor the child's parenting schedule to take into account plaintiff's unusual work schedule. We conclude that the trial court did not plainly err by granting defendant a standard parenting-time schedule.

As an initial matter, this issue is not preserved because defendant did not raise it before the trial court. See *Loutts v Loutts*, 298 Mich App 21, 23; 826 NW2d 152 (2012). This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*. at 328-329.

In this case, the trial court did not personally tailor a parenting-time schedule for the child, but it instead granted defendant a standard parenting-time schedule. The purpose of parenting time is to foster a strong relationship between the child and the parent. *Shade v Wright*, 291 Mich App 17, 29-30; 805 NW2d 1 (2010). There is no well-settled law that a court must tailor a parenting-time schedule to each particular child or each parent's work schedule. Moreover, defendant had requested that the trial court grant plaintiff the same schedule to which she now objects. Additionally—and to their credit—the parties have historically worked together to ensure that the child is at plaintiff's house while plaintiff is home from work and that defendant receives make-up parenting time afterward. We conclude that the trial court did not commit a plain or obvious error when it granted defendant a standard parenting-time schedule.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause