*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIDGET MESSAROS,

　　　　　Plaintiff-Appellant,

v

MATTHEW MESSAROS,

　　　　　Defendant-Appellee.

UNPUBLISHED
November 9, 2021

Nos. 356567; 357467
Shiawassee Circuit Court
LC No. 2017-001009-DM

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

In Docket No. 356567, plaintiff appeals as of right an order modifying the parenting-time arrangement for the parties' two children, LM and EM. On appeal, plaintiff argues that the trial court erred by finding there was an established custodial environment with both parties, and further erred by using a preponderance-of-the-evidence burden of proof. Plaintiff also argues that the trial court erred in its best-interests determination. In Docket No. 357467, plaintiff appeals as of right an order denying her request that defendant pay her attorney fees. Plaintiff argues that the trial court erred when it declined to award her attorney fees because she demonstrated her inability to afford the fees. We affirm in both appeals.

## I. FACTUAL BACKGROUND

In 2018, the parties entered into a consent judgment of divorce, agreeing to share legal custody of their children. With regard to physical custody, plaintiff had the children a majority of the time, although defendant was given substantial parenting time. The judgment provided for a step-up in defendant's parenting time of EM (the younger sibling) as she grew a bit older. When EM turned two years old, defendant's parenting time for EM merged with that of LM, and, under the consent judgment, defendant had parenting time for both children for Tuesday overnights, for overnights every other weekend, and for a few hours on Thursday afternoons. Defendant later sought a change to this arrangement, asserting, among other things, that plaintiff was speaking ill of him in the presence of their children. He sought either sole physical custody or an equal, 50/50 parenting-time arrangement.

-1-

A multiday evidentiary hearing took place before a referee. Evidence showed that both parents had good, flexible jobs, appropriate homes, and were closely involved in the children's lives. Testimony also revealed that plaintiff held an extreme amount of rancor toward defendant. The referee, and later the circuit court—after a de novo hearing—concluded that a change in parenting time was warranted on the basis that plaintiff was failing to foster a close relationship between defendant and the children. The referee, and later the circuit court, ordered a 50/50 parenting-time arrangement. The circuit court also denied plaintiff's request for attorney fees. This appeal followed.

## II. STANDARDS OF REVIEW

MCL 722.28 states:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

As stated in *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003):

> [This Court] appl[ies] three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Quotation marks and citations omitted.]

This Court reviews for an abuse of discretion a trial court's decision regarding a request for attorney fees. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id.*

## III. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff contends that the circuit court erred in analyzing certain issues relating to the children's established custodial environment (ECE). We disagree.

In general, a modification to a parenting-time or custody order may be initiated only if the party seeking the modification shows that it is justified by proper cause or a change of circumstances. MCL 722.27(1)(c); *Marik v Marik (On Remand)*, 325 Mich App 353, 367; 925 NW2d 885 (2018); *Vodvarka*, 259 Mich App at 512-513. This requirement serves as a type of "threshold" for commencing the proceedings. See *Corporan v Henton*, 282 Mich App 599, 609; 766 NW2d 903 (2009). However, caselaw indicates that the meaning of the phrase "proper cause or . . . change of circumstances," see MCL 722.27(1)(c), differs depending on whether the modification in question amounts to a change in custody or is "merely" a change in parenting time.

In the context of a change of *custody*, "proper cause" can be established by a preponderance of the evidence of an appropriate ground that is "relevant to at least one of the twelve statutory best-interest factors[, MCL 722.23(a)-(*l*),] and [is] . . . of such magnitude to have a significant effect on the child's well-being." *Vodvarka*, 259 Mich App at 512. "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. To establish a "change of circumstances" sufficient to initiate the modification of custody, the moving party "must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. "This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best[-]interest factors." *Id*. at 514.

These *Vodvarka* standards apply where a requested modification of parenting time will result in a change in the child's ECE. *Marik*, 325 Mich App at 367; *Shade v Wright*, 291 Mich App 17, 27; 805 NW2d 1 (2010). MCL 722.27(1)(c) explains that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."

Different standards apply to requests for modification of parenting time. *Shade*, 291 Mich App at 25, 27-28. Such requests are subject to "a lesser, more flexible, understanding of 'proper cause' or 'change in circumstances' " than the stricter *Vodvarka* framework. *Marik*, 325 Mich App at 367-368 (quotation marks and citation omitted). The less-stringent standards apply if "the request involves a change to the duration or frequency of parenting time[.]" *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). The *Shade* Court stated that "the very normal life change factors that *Vodvarka* finds insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time." *Shade*, 291 Mich App at 30.

The distinction rests on the differences regarding the focus of custody and parenting time. "[T]he primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, [and] the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id*. at 28-29.

After the threshold showing of proper cause or a change of circumstances has been established, the parent seeking the change in custody or parenting time must show that the change is in the child's best interests to succeed. MCL 722.27(1)(c). If the modification would change the child's ECE, the burden is on the moving parent to show by clear and convincing evidence that the modification is in the child's best interests. MCL 722.27(1)(c); *Shade*, 291 Mich App at 23. If the proposed modification would not change the ECE, the parent seeking that modification must "establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

To summarize, when considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed

change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010).]

Accordingly, a determination of whether a change in custody or "merely" a change in parenting time is at issue is necessary both to evaluate the issue of the "threshold" for initiating a change in the child's care and also to evaluate the applicable standard of proof in relation to the best-interests factors.

Plaintiff contends that a change of custody occurred in the present case by way of the trial court's award of 50/50 custody. In support of her position, plaintiff relies on *Lieberman v Orr*, 319 Mich App 68; 900 NW2d 130 (2017). The *Lieberman* Court explained that if a proposed parenting-time change "alters the established custodial environment, the proposal is essentially a change in custody, and *Vodvarka* governs." *Id*. at 84. In *Lieberman*, the defendant mother had primary physical custody of the parties' two children, and the parties shared joint legal custody. *Id*. at 72. The parties had stipulated to a parenting-time schedule that gave the plaintiff 140 overnights a year and the defendant 225 overnights a year. *Id*. The plaintiff moved to modify parenting time and change the children's schools. *Id*. at 74. He requested "essentially that the parties swap the current parenting time schedule." *Id*. (quotation marks omitted). Advocating in favor of application of the lesser standards in *Shade*, the plaintiff argued that the parties had joint physical custody, that the swap would not materially change the amount of time the children spent in each home, and that "both parents would continue to share in providing love, support, and guidance of the minor children[.]" *Id*. at 75 (quotation marks omitted).

The defendant disagreed with the plaintiff's positions that the parties had joint physical custody and that the proposed change in parenting time would not materially change the amount of time the children would spend in each parent's household. *Id*. She argued that the plaintiff's proposed modifications would change the ECE and that his request was actually a motion to change custody, "notwithstanding its label[.]" *Id*. The defendant argued that the *Vodvarka* standards applied to the plaintiff's request and that he had not shown proper cause or a change of circumstances as discussed in *Vodvarka*. *Id*. at 76.

The trial court agreed with the plaintiff's arguments. *Id*. It analyzed the best-interests factors of MCL 722.23 under the preponderance-of-the-evidence standard. *Id*. It granted the plaintiff's motion, ultimately awarding the plaintiff 225 overnights a year and the defendant 140 overnights a year. *Id*. This was an 85-night increase in the plaintiff's parenting time. *Id*.

-4-

This Court considered whether the trial court applied the proper standard to the plaintiff's motion, and it concluded that, despite the label the plaintiff had given to his motion, his "proposed modifications to parenting time effectively changed physical custody of the children from defendant to plaintiff." *Id*. at 84-85. It explained:

> The parties' judgment of divorce awarded legal custody to both parents, but physical custody of the children to defendant; the judgment did not award the parties joint physical custody. As noted, an award of physical custody primarily or solely to one party typically entails a situation in which the children receive physical care and supervision primarily from the parent awarded that status. That is the case here. In accordance with the parties' agreement that defendant would be the children's primary physical custodian, the children in the case at bar have resided with and been cared for and supervised primarily by defendant since entry of the judgment of divorce. Thus, it defies the plain meaning of the word "primary," as well as rudimentary mathematics, to say that reducing the primary custodian's overnights with the children from 225, or nearly 62% of the calendar year, to 140, or approximately 38% of the calendar year, does not change primary physical custody. By proposing a reduction in the number of overnights the children spend with defendant to a distinct minority of the year, plaintiff was proposing a change in custody, regardless of the label he gave his motion. Accordingly, the proper legal standard under which to review his motion was the more burdensome and restrictive standard set forth in *Vodvarka* . . . .
>
> Even if we were to accept plaintiff's characterization of his motion as one simply to modify parenting time and change schools, we nevertheless would hold that the trial court committed error requiring reversal by finding, against the great weight of the evidence, that plaintiff's proposed change would not affect the established custodial environment the children share with defendant and by not analyzing the motion under the applicable legal framework set forth in *Vodvarka*. [*Lieberman*, 319 Mich App at 85-86 (footnotes omitted).]

The *Lieberman* Court stated that while "minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, significant changes do." *Id*. at 89-90 (citation omitted). Examples provided by the *Lieberman* Court of such significant changes include a substantial reduction in the amount of time a parent was to spend with a child, see *Rains v Rains*, 301 Mich App 313, 323-324; 836 NW2d 709 (2013), a modification that changed a parent equally active in a child's life to a "weekend parent," see *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008), and a change from year-round near equal parenting time to one parent having parenting time during the school year and the other having parenting time during the summer, see *Brown v Loveman*, 260 Mich App 576, 596; 680 NW2d 432 (2004). *Lieberman*, 319 Mich App at 89-90.

In the present case, in the period preceding the change in the parenting-time schedule, defendant had 133 overnights a year with the children, on the basis of his Tuesday overnights and

-5-

his every-other-weekend overnights.[1]  The 50/50 split resulted in 182.5 overnights for each party, so plaintiff's overnights were decreased by 49.5 each year and defendant's were increased by 49.5. In *Lieberman*, a change of 85 nights occurred.  *Id*. at 90.  The change in the present case is considerably smaller than that in *Lieberman*.[2]  Moreover, in *Lieberman*, *id*. at 72, the "children . . . live[d] with defendant during the school year, and plaintiff received parenting time three weekends a month during the school year and all but the first and last weeks of the children's summer vacation."  The plaintiff had 140 overnights and the defendant had 225.  *Id*.  The plaintiff sought to "swap" this schedule.  *Id*. at 74.  Significantly, this Court stated:

> [C]entral to the children's established custodial environment with defendant was the support and guidance defendant gave and the material needs she met relative to the children's school attendance.  Plaintiff's proposed modification of parenting time would not only substantially reduce the time defendant would spend with the children, it would also change the character of her interaction with the children. Therefore, the proposal significantly alters the children's established custodial environment with defendant.  [*Id*. at 91-92.]

In the present case, as pointed out by the referee,[3] defendant already had contact with the children on seven out of every 14 days; every week, defendant saw the children at least two times, and then spent every other weekend with them.  Also, the evidence showed that plaintiff was extremely involved in the children's everyday schedules, but it showed that defendant was, as well. As such, the present case is simply not comparable to *Lieberman*.

MCL 722.27(1)(c) explains that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."  There was ample evidence that the children looked to both parents for these things and that defendant had been heavily involved in the children's care for their entire lives.  In addition, even though plaintiff was the one to schedule medical appointments, defendant was diligent in participating in them.  The evidence did not "clearly preponderate[] in the opposite direction" from the trial's finding that an ECE had existed with both parents.  *Vodvarka*, 259 Mich App at 507 (quotation marks and citation

---

[1] Plaintiff states on appeal that defendant had fewer overnights with EM, but this lower amount was on the basis of an earlier, *outdated* overnight schedule listed in the judgment of divorce. Defendant had since begun exercising the same amount of parenting time for both children.

[2] The *Lieberman* Court also stated, "By proposing a reduction in the number of overnights the children spend with defendant to a distinct minority of the year, plaintiff was proposing a change in custody, regardless of the label he gave his motion."  *Lieberman*, 319 Mich App at 86.  Here, neither parent was given overnights amounting to a "distinct minority of the year"—they were given equal time.

[3] The referee concluded that the ECE had existed with both parents and that the new order did not change the ECE.  The circuit court stated that it agreed with the referee's analysis as to the ECE.

omitted).[4] Accordingly, when the court modified the parenting-time schedule to provide for a 50/50 split, no change in the ECE occurred, and, contrary to plaintiff's assertion, the court did not apply an improper burden of proof when it used a preponderance-of-the-evidence standard. *Shade*, 291 Mich App at 22-23.

Plaintiff also argues that there was no basis to revisit custody or parenting time in the first instance. At the beginning of the evidentiary hearing, the referee stated that the "proper cause" issue under *Vodvarka* had already been decided by the circuit court and that the evidentiary hearing would proceed directly to an assessment of the best-interests factors. The circuit court had indicated, earlier, that an evidentiary hearing was warranted on the basis of factor (j) of the best-interests factors. See MCL 722.23(j) (referring to "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents."). The court did not explicitly indicate whether, in ordering the hearing, it was operating under the more stringent change-of-custody standard from *Vodvarka* or the lesser parenting-time standard from *Shade*. And although plaintiff requested equal parenting time, he also requested "sole" physical custody as an alternative in his written motion. The proposal of "sole" physical custody was a proposal to change the ECE, meaning that the *Vodvarka* standard would apply. However, on appeal, plaintiff focuses not on this *alternative request* that defendant *initially* made, but focuses on what *actually resulted*— i.e., the 50/50 split in parenting time. As discussed, this 50/50 result did not alter the ECE.

## IV. BEST INTERESTS

Plaintiff next challenges the trial court's findings regarding several of the best-interests factors and argues that no change in custody or parenting time was warranted. We disagree.

---

[4] Despite the *Lieberman* Court's reference to the language of the divorce judgment, see *Lieberman*, 319 Mich App at 85, the fact that the judgment of divorce in the present case characterized plaintiff as having "sole physical custody" should not be viewed as dispositive in light of all the other circumstances. We note, too, that in *Pierron v Pierron*, 282 Mich App 222, 248; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010), this Court stated:

> *The testimony established that although defendant had primary physical custody and the children lived with her the majority of the time, the children did look to both of their parents "for guidance, discipline, the necessities of life, and parental comfort."* MCL 722.27(1)(c). The testimony further showed that the children had permanent, secure, and lasting relationships with both plaintiff and defendant. Although the children's relationship with their father may have become strained after the change-of-school issue arose, and even though the evidence suggested that the children were not as close with their father as they were with their mother, the circuit court properly found that an established custodial environment existed in both parents' homes. The circuit court's finding in this regard was not contrary to the great weight of the evidence. MCL 722.28. [Citations omitted; emphasis added.]

-7-

After the circuit court determined that defendant's proposed change would not affect the children's ECE, defendant was required to show by a preponderance of the evidence that the change was in the best interests of the children. *Pierron*, 486 Mich at 93. MCL 722.23 states:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Plaintiff takes issue with the court's findings regarding factors (b), (c), (g), (h), (j) and (k).[5] The court found the parties equal with regard to factors (b) and (c), (g), and (k), and equal on factor (h) as applied to LM and irrelevant as applied to EM. The court found that defendant was favored with regard to factor (j).

Plaintiff first contends that the court should have favored her regarding factors (b), (c), (g), (h), and (k).

Concerning factor (b), plaintiff states:

> Plaintiff[] is the one who does all the work to ensure that the children are properly enrolled in school and extracurricular activities. As far as Defendant[]'s disposition toward doing that in the future, the only thing Defendant[] ever signed the children up for was a daycare/preschool facility completely out of the way of everyone involved and with no nearby medical facilities.

However, defendant explained at the evidentiary hearing that he was not able to arrange for activities for the children because he only had them one overnight from Monday through Friday. He said that he was "[a]bsolutely" intending to enroll them in activities if he were to be awarded "more weekday overnights." The court stated that this factor anticipated how the parties would act in the future. The court's finding of equality on this factor was not against the great weight of the evidence. Defendant was intending to enroll the children into more activities in the future if awarded more parenting time, and it was clear from the evidence as a whole that defendant would foster the love between him and the children and continue their involvement with religion. MCL 722.23(b).

Concerning factor (c), plaintiff focuses on medical care and states that she is the one who takes the initiative to set up medical appointments. But the evidence showed that defendant was diligent about staying on top of the children's medical issues, wanted to be involved equally in their care, and took active steps to be involved. Plaintiff herself acknowledged that he usually attended appointments.[6] All the evidence, viewed as a whole, did not clearly preponderate against the court's findings on factor (c).

---

[5] Although, as noted, it was a change in parenting time that was at issue in the present case and not a change in the ECE, plaintiff focuses, in her briefing, on the best-interests factors from MCL 722.23 and *not* on the parenting-time factors in MCL 722.27a. We address the arguments *as made by plaintiff* and do not set forth a separate analysis of the parenting-time factors. We also note that the court's failure to address the parenting-time factors is not grounds for reversal. See *Shade*, 291 Mich App at 32 ("While the trial court did not explicitly address the factors in MCL 722.27a(6) in modifying defendant's parenting time, it was clear from the trial court's statements on the record that the trial court was considering the minor child's best interests in modifying defendant's parenting time.").

[6] In addition, an incident occurred during which LM was sick; defendant had to pick him up from school during plaintiff's parenting time; and plaintiff, instead of letting LM stay and recover for a

-9-

As for factor (g), plaintiff claims that this factor favored her because she was continuing with counseling, whereas defendant had stopped going. She also makes note of plaintiff's prior mental instability and states that she once saw an open beer at defendant's home. It is not in dispute that defendant had issues, in the past, with his mental health and with alcohol. But these issues were *before* the consent judgment of divorce, and defendant testified that he had been in counseling for several years and had resolved these earlier issues. The parties agreed in the judgment of divorce to refrain from drinking alcohol during their parenting times. Plaintiff points to her testimony that one time, when she picked up EM, there "appeared to be a beer on the counter that [defendant] was trying to hide with his dinner." However, plaintiff could not remember when this incident occurred and stated that it might have been when the two were "separated." She admitted that she had not seen defendant drinking "recently." In addition, defendant stated that he does not keep alcohol in his home. Moreover, his former girlfriend said that she had never seen defendant drunk or intoxicated and that he did not drink when he had the children. Under all the circumstances, the evidence did not clearly preponderate against the court's finding that the parties were equal on factor (g).

Plaintiff contends that factor (h) favored her as applied to LM because she was the one who signed LM up for school and extracurricular activities. This is merely a reiteration of her argument regarding factor (b). Defendant explained that he would be more proactive about signing the children up for activities if he had more weekday overnights. The court's finding regarding factor (h) was not against the great weight of the evidence. The court aptly noted that the children were well-adjusted and that this was "the result of both parents."

Regarding factor (k), plaintiff does not allege any physical violence, and the record does not support any. The court stated that there may have been some instances that made plaintiff feel "harassed," but the court did not specify what these were, and it noted that they occurred before the consent judgment of divorce and therefore were not pertinent. In connection with factor (k), plaintiff focuses on her allegation that defendant had sent LM to her home with a walkie-talkie in order to eavesdrop on her, and notes that the walkie-talkie incident happened after the judgment of divorce. Defendant, however, testified that he gave the walkie-talkie to LM as a toy to help him with the difficult transitions from defendant's home to plaintiff's home. The court's finding regarding factor (k) was not against the great weight of the evidence. There was no evidence of domestic violence. Even if the walkie-talkie issue could somehow be analogized to a "stalking" allegation, defendant's testimony about the walkie-talkie being a mere toy supported the trial court's finding.

The court was primarily concerned with factor (j), and plaintiff contends that the trial court improperly concluded that defendant was favored with regard to this factor. Plaintiff contends that she did not speak ill of defendant in front of the children, that everything she said about defendant to others was true, and that she spoke negatively about defendant to a pediatrician out of concern for the children. But defendant testified that plaintiff did denigrate defendant, and even called him "disgusting," in the presence of the children. Also, LM's preschool teacher explained that plaintiff

---

few hours at defendant's house before the official start of defendant's parenting time, insisted that LM be returned to her home for a short while. This was not in the best interests of a sick child.

denigrated defendant and "made him out to be quite a horrible person" in the presence of the children. And, as far as the comments made to the pediatrician, they pertained to issues preceding the consent judgment of divorce. If plaintiff truly believed that defendant posed a risk of harm to the children, it is perplexing why she signed a consent judgment that granted him considerable parenting time. Instead, her comments fit with the pattern of her continuous attempts to denigrate him, including to people who spent time and interacted with the children. There was also evidence that plaintiff refused to facilitate defendant's participation in kindergarten orientation, failed to properly facilitate his participation in a medical appointment by way of telephone, refused to assist him in participating in LM's "t-ball," and stopped taking LM to soccer because she did not want to interact with defendant. Under all the circumstances, the trial court's conclusion that factor (j) favored defendant was not against the great weight of the evidence.

The court's discretionary ruling to change the parenting-time schedule is reviewed for an abuse of discretion. *Vodvarka*, 259 Mich App at 507-508. As stated in *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015), the definition of "abuse of discretion" means something different in a child-custody determination as compared to other types of cases and involves determining whether "the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." (Quotation marks and citations omitted; brackets removed). The court's decision does not meet this standard. A preponderance of the evidence supported that—in light of the concerns relating to plaintiff's fostering of the parent-child relationships between defendant and the children—an equal split of parenting time was appropriate.

Plaintiff points out that challenges to the referee's findings on factors (d) and (e) were not raised and that, therefore, the referee's conclusion that these factors favored plaintiff remained in effect at the time of the trial court's ruling. The referee found that factors (d) and (e) favored plaintiff, stating that defendant's home was fine but that the children had had an association with plaintiff's home for a longer period and that the presence of the maternal grandmother, who lived there, had been steady. It is true that challenges to these particular findings were not raised. But the trial court noted, "The factors aren't all equal. The [c]ourt . . . can give them appropriate weight based on the facts of the case." The court did not explicitly refer to factors (d) and (e), but it agreed with the referee's 50/50 split of parenting time. Implicitly, then, the court concluded that the concerns surrounding factor (j) outweighed the information regarding factors (d) and (e). The best-interests factors are not to be viewed as equal in weight or applied in a strictly mathematical fashion. *McCain v McCain*, 229 Mich App 123, 130-131; 580 NW2d 485 (1998). While the children had spent more time overall in plaintiff's home, and while the maternal grandmother also lived there and had a good relationship with the children, defendant was *also* in a suitable home. We must keep in mind that the standard of review is deferential. The trial court did not abuse its discretion by implicitly concluding that moving to a 50/50 parenting-time schedule was supported by the findings under factor (j), even despite the findings made under factors (d) and (e) regarding plaintiff's living situation.

The evidence as a whole showed that both plaintiff and defendant deeply loved the children, that the children loved both parents, and that both parents were very involved in the children's care and day-to-day life. Both parents had jobs with some flexibility. Both parents had

suitable homes and substantial incomes.  Under all the circumstances, the split-custody arrangement was not an abuse of discretion.

## V.  ATTORNEY FEES

Plaintiff lastly contends that the trial court erred by failing to award her attorney fees.  We disagree.

MCR 3.206(D) states:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Plaintiff contends that she should have been awarded fees under MCR 3.206(D)(2)(a) because she was unable to bear the expense of the action.  The trial court stated that "plaintiff testified that she has been financially crippled by these proceedings."  It then noted that plaintiff had made her allegation "in the form a [sic] conclusion with no supporting material."  It continued, "Accordingly, the [c]ourt exercises its discretion not to award attorney fees."

The court did not abuse its discretion.  First, what plaintiff actually said was the following, after being asked, on the fourth day of the evidentiary hearing, if she had any questions:

> I said my only comment is that my understanding was this was supposed to be eight hours, and eight hours to present your case, and this has just gone so far beyond that.

> That it's just devastating to me and it's hard for me and my family financially, and emotionally, and this needs to end, and I'm pleading that this is done [at the next hearing date], and some justice is served.

Plaintiff did not state that the case was *financially devastating*.  She said that "it"—presumably the case in general—was devastating and added that things were "hard" for her and her family financially.  She did not say that she was unable to bear the expense of the action.  Also, when filing her objection to the referee's recommendation and requesting attorney fees, she claimed the following:

> Plaintiff has testified she has been financially crippled by this litigation and is unable to bear the expense of this action, including the extensive discovery request by the Defendant.

However, plaintiff did not point to where in the record she offered this supposed testimony about being financially crippled, and on appeal she does not point to where in the record she offered this supposed testimony. In addition, in connection with her request for attorney fees, she did not offer any details or offers of proof regarding her financial situation or bank-account balances. Plaintiff was earning a salary of $81,000 a year. It is true that defendant earned a considerably higher salary, but the pertinent threshold question for MCR 3.206(D)(2)(a) is whether plaintiff was unable to bear the expense of the action, not whether defendant was more easily able to bear the expense of the action as compared to plaintiff. In *Smith v Smith*, 278 Mich App 198, 207-208; 748 NW2d 258 (2008), this Court stated:

> Pursuant to [MCR 3.206(D)(2)(a)], the party requesting the fees must allege facts sufficient to show that he or she is "unable to bear the expense of the action, and that the other party is able to pay."

> We agree with the trial court that defendant did not demonstrate that she was unable to bear the expense of the action, and that plaintiff was able to pay . . . . Defendant's request for attorney fees and supporting affidavit were solely comprised of unsubstantiated assertions that, aside from spousal support used for living expenses, her income is "minimal," and that she would be unable to defend the action unless the trial court awarded her attorney fees.

Here, too, plaintiff made unsubstantiated assertions. As such, the trial court did not abuse its discretion by declining to award attorney fees under MCR 3.206(D)(2)(a).

Plaintiff cites *Stallworth v Stallworth*, 275 Mich App 282; 738 NW2d 264 (2007) in support of her position. In that case, this Court stated:

> In the present case, the trial court decided that awarding plaintiff attorney fees was necessary to enable her to obtain a divorce. The parties stipulated that each attorney was owed $18,500. Plaintiff was awarded $10,000 in attorney fees. Because plaintiff's yearly income is less than the amount she owed her attorney, she sufficiently demonstrated her inability to pay her attorney fees. Furthermore, defendant earns more than double what plaintiff earns in a year, which demonstrated his ability to contribute to plaintiff's attorney fees. Under these circumstances, the trial court's ruling was within the range of reasonable and principled outcomes. [*Id*. at 288-289.]

*Stallworth* does not require reversal in the present case because in that case, the plaintiff "sufficiently demonstrated" the threshold condition of "her inability to pay her attorney fees." *Id*. at 288. Plaintiff in the present case did not do so.

Plaintiff also argues that defendant engaged in protracted discovery.[7] Presumably, this is a reference to MCR 3.206(D)(2)(b) and its mention of "discovery practices in violation of these rules." But plaintiff's entire argument about alleged discovery abuses is: "Before the hearings, the discovery period was extended by Defendant[] requests [sic] for many depositions from witnesses who ultimately did not end up testifying." Plaintiff utterly fails to indicate how defendant violated the court rules. As stated in *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998):

> [A] mere statement without authority is insufficient to bring an issue before this Court. It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [Citation and quotation marks omitted.[8]]

Plaintiff next argues that an award of fees was appropriate under MCR 3.206(D)(2)(b) because defendant violated a court order, namely the judgment of divorce. The judgment states: "When [EM] turns three years old, then the parties may revisit the issue of expanding the Defendant's parenting time as allowed pursuant to state law." Plaintiff contends that defendant violated the judgment of divorce by seeking more parenting time when EM was only two years old.

This provision in the judgment provided an avenue for expansion of defendant's parenting time but did not state that defendant could seek an expansion *only* if EM were three years old or

---

[7] Plaintiff further complains about defendant's usage of four of the five hearing dates to present his case, but fails to acknowledge that a considerable portion of this time was for her own attorney's questioning of plaintiff and defendant. Plaintiff's attorney acknowledged that his questioning of plaintiff and defendant on cross-examination had constituted a primary part of his case in chief. The referee pointed out that "both attorneys have felt it necessary to inquire with great specificity on lots of issues, and that's been on both sides."

[8] Also, in *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007), this Court stated:

> On appeal, plaintiff contends that defendant engaged in dilatory trial tactics designed to abuse him and frustrate his efforts to participate in their children's lives and obtain a just child support arrangement. *However, plaintiff merely summarizes the various actions taken by defendant throughout the lower court proceedings without further evidence. On the record before us, we cannot conclude that the actions complained of were not taken in good faith.* Furthermore, the trial court specifically found that neither party was responsible for the protracted nature of the litigation. Therefore, plaintiff has not demonstrated that the actions taken by defendant were unreasonable or that any expenses he incurred were causally connected to her conduct. The trial court did not abuse its discretion in declining to award plaintiff his attorney fees. [Citation omitted; emphasis added.]

older.  Indeed, such a provision would be contrary to ensuring the children's welfare.  MCL 722.27a(1) states:

> Parenting time shall be granted in accordance with the best interests of the child.  It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents.  Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

In addition, as already discussed, MCL 722.27(1)(c) allows for modification of custody or parenting-time orders for proper cause or a change of circumstances.  Under the circumstances, defendant's seeking a change to the parenting-time schedule was not a basis for awarding attorney fees.

Affirmed.


/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica