*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM LOUIS ROSIN,

       Plaintiff-Appellee,

v

LAURA MILLER ROSIN,

       Defendant-Appellant.

UNPUBLISHED
January 19, 2023

Nos. 357142; 358764
Oakland Circuit Court
Family Division
LC No. 2011-781648-DM

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

In these consolidated appeals arising from post-divorce proceedings, defendant, Laura Rosin, appeals the trial court's order reducing the amount of spousal support payable by plaintiff, William Rosin, and the trial court order partially denying defendant's request for attorney fees under MCR 3.206(D).[1] For the reasons provided below, we vacate the trial court's reduction of spousal support and its order partially denying attorney fees and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Both appeals arise out of the parties' divorce case, settlement agreement, and subsequent modification of spousal support. The parties married in 1992 and divorced in 2011. During their marriage, they had two children, who were 16 years old and 14 years old at the time the parties divorced. The parties entered into a settlement agreement, which the trial court incorporated and

---

[1] Defendant appeals the denial of attorney fees as of right in Docket No. 357142. Defendant appeals the reduction of spousal support by leave granted in Docket No. 358764. *Rosin v Rosin*, unpublished order of the Court of Appeals, entered March 10, 2022 (Docket No. 358764) (granting leave and consolidating with Docket No. 357142).

merged into a consent judgment of divorce. Relevant to the spousal support issues raised here, the judgment provided:

> 22. Subject to the terms and intentions set forth herein, commencing on January 1, 2012, Plaintiff shall pay to Defendant, through the Michigan State Disbursement Unit, the sum of $6,500.00 per month as modifiable spousal support.

> * * *

> d. Neither party is precluded from filing a motion to modify spousal support at any time in accordance with applicable law.

> e. On and after January 1, 2020, Defendant stipulates that the passage of time shall be deemed a change of circumstances entitling Plaintiff to a hearing relative to modification of spousal support. However, no inferences as to whether or not spousal support shall be modified at that time shall be drawn from this provision.

> f. On or after January 1, 2024, if Plaintiff is still paying spousal support in any amount to Defendant, Plaintiff may file a motion to modify spousal support. At that time, Defendant shall have the burden of proof as to how long spousal support should continue (if at all), and if so, in what amount.

On January 13, 2020, plaintiff filed a motion to terminate or significantly reduce the amount of spousal support. He argued that support was no longer warranted because his income had steadily and substantially decreased since the judgment was entered and because defendant was fully capable of supporting herself. In June 2020, following a motion for interim attorney fees described below, defendant responded to plaintiff's motion to terminate spousal support, arguing that plaintiff had failed to establish a change in circumstances that would permit modification of the spousal support award.

A referee held a hearing on plaintiff's motion to terminate spousal support over six days between July and October 2020. At the time of the hearings, the parties had been divorced for almost nine years. It was established that plaintiff had been paying defendant, and continued to pay, the prescribed $6,500 a month in spousal support, or $78,000 a year.

At the hearing, the parties presented evidence of their financial conditions since the divorce judgement. Plaintiff, a partner at a large law firm, presented evidence that his individual income as an attorney had decreased from $474,142 in 2011 to $362,487 in 2019. Defendant had no income from 2011 to 2016 because she did not work outside the home. For the following years, her earned income, i.e., not including spousal support, was: $12,519 in 2017, $22,527 in 2018, and $15,931 in 2019.

Defendant was a teacher when the parties married, but after the parties' children were born, she became a homemaker. Through the first year after the divorce, defendant continued not to work outside the home. Defendant testified that she struggled to find consistent full-time teaching work commiserate with her education and training. She worked one year as a private school

kindergarten teacher and two years as a substitute teacher. Although defendant applied for positions and had some interviews, she was not offered any full-time teaching positions. Eventually, she took a job as a preschool teacher in Bloomfield Hills. She was predominantly a part-time employee, but obtained a full-time employment position at the preschool in September 2020.

After the six-day evidentiary hearing, the parties submitted written closing arguments. On December 3, 2020, the referee issued a recommended order, reducing plaintiff's spousal support obligation from $6,500 a month to $3,350 a month, retroactive to February 1, 2020. In her written opinion accompanying the recommended order, the referee reviewed the various factors for awarding spousal support.[2] The referee did not, however, provide any explanation of which factors were most important or how she specifically arrived at the nearly 50% reduction of spousal support. The referee also did not address defendant's request for attorney fees. On December 23, 2020, defendant filed objections to the referee's recommended order and requested a de novo hearing before the circuit court.

The circuit court thereafter entered its opinion and order regarding the objections. The court found that none of defendant's objections had any merit and adopted the referee's recommended order.

Throughout the proceedings on the motion to terminate spousal support, defendant requested attorney fees under different authorities. In March 2020, before responding to plaintiff's motion to terminate spousal support, defendant filed a motion for attorney fees. Relying on MCR 3.206(D), defendant requested $5,000 from plaintiff to pay defense counsel's initial retainer fee. She characterized the $5,000 as "interim attorney fees." On June 5, 2020, the trial court granted defendant's motion, stating, in pertinent part:

> Defendant has alleged facts sufficient to show that she is unable to bear the expense of the action and that Plaintiff is able to pay. Therefore, pursuant to MCR 3.206(D)(2)(a), the Court grants Defendant's request for an award of attorney fees in the amount of $5,000, to be paid by Plaintiff to Defendant's attorney within 14 days of the date of this order.

The same day the court granted her request for "interim attorney fees," defendant again requested attorney fees in her response to plaintiff's motion to terminate spousal support. In her requested relief, defendant asked the court to "[a]ward Defendant attorney fees so wrongfully incurred in having to respond to this frivolous Motion[.]" Defendant's response did not specify the court rule through which she sought attorney fees.

---

[2] This included the past relations and conduct of the parties, the duration of the marriage, the parties' abilities to work, the source and amount of property awarded to the parties, the parties' ages, the parties' abilities to pay support, the present situation of the parties, the needs of the parties, the parties' health, the parties' prior standards of living and whether either is responsible for the support of others, the parties' contributions to the joint estate, a party's fault in causing the divorce, the effect of cohabitation on a party's financial status, and general principles of equity.

Defendant again requested attorney fees in her closing arguments, following the evidentiary hearing before the referee. When addressing the factors for consideration for spousal support, defendant claimed that she had incurred over $62,000 in attorney fees. She requested that plaintiff "pay all of Defendant's attorney fees pursuant to MCR 3.206(D) and MCR 1.109(E)." She offered to submit a bill of particulars at the court's request. The referee, however, did not address attorney fees at all in its recommended order and opinion.

In her objection to the referee's recommendation, defendant noted that the referee omitted this request in her recommendation and requested attorney fees in excess of $70,000. But she did not specify what request the referee overlooked. In her prayer for relief, defendant asked the court to award fees pursuant to MCR 3.206(D).

In its opinion and order, the trial court noted that defendant requested attorney fees in her response to plaintiff's motion to terminate spousal support for having to respond to the "frivolous motion." Because the court found that plaintiff's motion was not frivolous, it found no basis to award attorney fees. The court also noted that it had previously granted defendant's motion for interim attorney fees in the amount of $5,000, but it did not address whether she was entitled to fees.

This appeal followed.

## II. LAW AND ANALYSIS

### A. ATTORNEY FEES

Defendant argues that the trial court erred when it failed to award her attorney fees under MCR 3.206(D). We agree that the trial court erred by failing to address whether, and to what extent, defendant was entitled to attorney fees under MCR 3.206(D), separate from her entitlement under other authorities. We vacate and remand for the trial court to address whether defendant is entitled to additional fees under MCR 3.206(D).

Under MCR 3.206(D), a party may request that the court order the opposing party to pay all or part of attorney fees related to a case or proceeding, when the requesting party cannot afford it. In its relevant part it provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.] [MCR 3.206(D).]

A party may request attorney fees under MCR 3.206(D) in a written closing argument because the court rule "does not require that a request for attorney fees be made in a separate motion." See

*Smith v Smith*, 278 Mich App 198, 207 n 3; 748 NW2d 258 (2008). In fact, such a request may be made at any time. *Id.*; see also MCR 3.206(D).

At the threshold, the parties dispute whether defendant preserved this issue. A party preserves an issue for appellate review by raising the issue in the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). We conclude that defendant preserved the issue, but barely. See *Smith*, 278 Mich App at 207 n 3.

Defendant raised this issue before the trial court, and the trial court did not address it. The trial court's failure to address the request for fees under MCR 3.602(D) was an error, but an understandable one. In defendant's objections to the referee's recommendations that she presented to the circuit court, she argued that the referee ignored her previous request, without specifying when and where she previously made such a request. The court observed that defendant requested attorney fees in her prayer for relief in her June 5, 2020 response to plaintiff's motion to terminate spousal support. In that response, defendant asked for "attorney fees so wrongfully incurred in having to respond to this frivolous Motion." The circuit court denied this request for attorney fees because plaintiff's motion was not frivolous.

On appeal, defendant takes issue with the circuit court's denial of attorney fees because it relied on her June 5, 2020 request for attorney fees instead of her May 27, 2020 request. Defendant fails to acknowledge that the May 27 motion only sought an initial retainer, and did not ask the court to keep the issue open or preserve the issue going forward. On appeal, she also makes no mention of her request for fees under MCR 3.206(D) in her closing argument or her objections to the referee's recommendation.

In her written closing arguments, however, defendant asserted that she had incurred more than $62,000 in attorney fees and she explicitly requested "that Plaintiff pay all of Defendant's attorney fees pursuant to MCR 3.206(D) . . . ." Under *Smith*, 278 Mich App at 207 n 3, this request for attorney fees under MCR 3.206(D) was sufficient to raise the issue in the trial court.

Because the trial court failed to address this request for attorney fees, we remand this case to the trial court for consideration of that request.

## B. SPOUSAL SUPPORT

Defendant also argues that the trial court abused its discretion when it reduced plaintiff's spousal support obligation from $6,500 a month to $3,350 a month. We agree. Although the trial court considered the relevant spousal support factors, it failed to link its analysis of the factors to the amount of the reduction. Without such an explanation, we cannot conclude that the reduction was equitable. We, therefore, vacate the order reducing spousal support and remand for reconsideration of this issue.

A trial court's factual findings are reviewed for clear error. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 432-433. The trial court's dispositional ruling regarding spousal support is discretionary and the must be affirmed unless this Court is left with the firm conviction that it was inequitable. *Berger v Berger*, 277 Mich App 700, 727; 747 NW2d 336 (2008).

The main objective of spousal support, or alimony, "is to balance the incomes and needs of the parties in a way that will not impoverish either party." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000) (citation omitted). The court must base spousal support on what is just and reasonable under the circumstances of the case. *Id.* MCL 552.28 authorizes the modification of spousal support awards and states:

> On petition of either party, after a judgment for alimony . . . , the court may revise and alter the judgment, respecting the amount or payment of the alimony . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

Modification of spousal support is a two-step inquiry. See *Luckow v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011). First, for a court to modify spousal support, the moving party "must establish new facts or changed circumstances arising since the prior order regarding support was issued." *Id.* "If the court finds that a party has established a change in circumstances, it must then make factual findings from which to conclude whether the alimony should be modified and, if so, by what amount." *Id.* (quotation marks and citation omitted). When making this determination, a trial court should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger*, 277 Mich App at 726-727 (citation omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003) (citation omitted).

Here, the threshold inquiry of whether there was a change in circumstances was satisfied through the parties' stipulation. The parties had agreed in the consent judgment of divorce that defendant would receive $6,500 a month in spousal support. The judgment also provided that after January 1, 2020, the passage of time would be deemed a change of circumstances entitling plaintiff to move to modify spousal support.

The second inquiry, application of the *Berger* factors, is more complicated. For the most part, defendant does not contest the trial court's factual findings regarding the relevant *Berger* factors.[3] Rather, her main argument is that the court's reduction of the amount of spousal support

---

[3] Several of the factors are not disputed or not relevant to this case. For example, regarding the second *Berger* factor, defendant does not dispute that the trial court properly found that the parties were married approximately 19½ years. Likewise, defendant does not take any exception to the

is inequitable. After analyzing the pertinent factors, the referee recommended, and circuit court ordered, a reduction of the amount of spousal support plaintiff owed to $3,350 a month. This was approximately a 48.5% reduction.

The trial court determined that the first *Berger* factor, pertaining to the parties' past conduct, and the twelfth factor, pertaining to "fault," were not particularly relevant for determining if spousal support should be modified. We largely agree. Defendant argues that both the referee and the trial court ignored the effect of plaintiff's alleged abuse on her ability to seek or maintain work. She claims that she was a victim of abuse during and after the marriage, which kept her out of the workplace following the divorce. In its opinion, the trial court addressed defendant's argument that she was prevented from testifying about the alleged abuse. The court found that she did testify about it but the testimony was not relevant to the referee's decision. The trial court appears to have considered both factors; it just did not place great weight on them in modifying spousal support. Neither party appears to have benefited from the application of these factors. Neither the referee nor the court faulted defendant for failing to immediately seeking full-time work following the divorce. Rather, the court addressed defendant's financial condition without punishing either party for her delay in seeking employment following the divorce. Further, consistent with the trial court's findings, prior conduct and purported fault may have had limited impact on defendant's ability to find and maintain work, since she still had difficulty finding fulltime employment after the alleged abuse stopped. Defendant fails to point to authority addressing these factors or explain how an alternate analysis would have changed the spousal support determination. We conclude that the trial court did not err in its consideration and application of these two factors.

Defendant does not challenge any of the trial court's findings regarding the third factor, regarding the parties' abilities to work. While much of the hearings were focused on defendant's attempts to procure employment, the trial court ultimately found that defendant's approach, while not optimal, was "not so wholly unreasonable that it supports terminating spousal support."

In relation to the fourth factor, which pertains to the source and amount of property awarded to the parties, the trial court noted that this factor was not particularly relevant to a request to modify spousal support, but the division of marital property nonetheless was equitable. Defendant argues that this view constitutes legal error, but the judgment of divorce merely references that the property division was part of a settlement agreement, the terms of which are not part of the record. Neither party attempted to admit any evidence of how the property was divided at the spousal-support hearing. Under these circumstances, there is no basis for concluding that the division of

---

trial court's findings related to the ages of the parties. At the time of the spousal-support hearings, plaintiff was 58 years old and defendant was 55 years old. For the health of the parties, the court found that both parties have health conditions, but those conditions did not currently affect their ability to earn income, and defendant does not dispute this. Defendant does not address factor 11 (the parties' contributions to the joint estate) or factor 13 (the effect of cohabitation on a party's financial status), and they are not particularly relevant to this case.

property is a material factor affecting the court's award of spousal support, or that the trial court erred in its conclusion.

Regarding the sixth *Berger* factor, which addresses the parties' abilities to pay spousal support, defendant does not challenge any particular finding of the trial court.[4] But defendant stresses that although plaintiff's income has decreased somewhat since the entry of the divorce judgment, his income still is vastly greater than defendant's income. Defendant's argument is focused on her claim that the court erred by not looking at or considering the parties' relative positions.

For the present situation of the parties, defendant argues that the trial court erred when it found that *plaintiff* had received a large inheritance since the divorce. In the body of defendant's brief, she states that *plaintiff* received a large inheritance after the divorce, but mentions in a footnote that she received an inheritance before the divorce, which shows that the court's finding is factually erroneous. Assuming defendant is challenging the court's finding that *plaintiff's* inheritance was received after the divorce, that argument has no merit. Plaintiff testified that he received the inheritance after his marriage to his current wife, which happened after the divorce. The court never mentioned defendant's inheritance, let alone when it occurred, but it was clear from the record that it happened during the parties' marriage.

Regarding the needs of the parties, defendant argues that the trial court erred by finding that she has "sufficient income." We were unable to locate anywhere in the referee's or the circuit court's opinions where there was a finding that defendant's earned income was "sufficient." The referee instead found that because defendant had lived solely on a spousal support award of $78,000 a year, and that amount met defendant's needs. So, the court found that $78,000 was sufficient to meet defendant's needs, not that defendant's income from teaching preschool was sufficient. This finding is not clearly erroneous. On the contrary, the record supports this conclusion because defendant lived for two years only on this income.

For factor 10, the prior standard of living of the parties and whether either is responsible for the support of others, the court merely found that at the time of the divorce, plaintiff was making more than $400,000 a year and was financially responsible for supporting the parties' two daughters. At that time, defendant was able to meet her needs on $78,000 a year from spousal support. The court also noted that plaintiff, although not legally obligated, was paying expenses for the parties' now-adult daughters. Defendant does not challenge any of these findings.

Here, the dispute is largely over the final factor, general principles of equity. Regarding this factor, the court simply noted that it "was considered in light of the facts and circumstances already described." Defendant does not put forth any relevant argument regarding this factor and instead avers that the attorney-fee issue in Docket No. 357142 is related.

---

[4] The court made no specific finding under this factor, other than to find that plaintiff's income from employment has steadily declined since the entry of the judgment of divorce, which has decreased his ability to pay spousal support, and that defendant "has a very modest income."

Here, the referee addressed each of the factors in her written opinion, which the trial court largely adopted. But the referee did not provide an explanation of how the analysis of these factors rationally linked to its reduction of spousal support from $6,500 a month to $3,350 a month—or why such a reduction was equitable. Acknowledging the deference we afford a trial court's dispositional ruling on spousal support, we are unable to conclude that this almost 50% reduction is equitable.

The amount of the reduction, though significant, is not the problem. The trial court could have justified a significant reduction in spousal support in a variety of ways. For example, it could have linked the reduction to plaintiff's reduction in income, or to defendant's increase in independent income. But neither of these rationales would explain such a significant reduction. It is uncontested that plaintiff's income decreased since the divorce judgment. In 2011, plaintiff made $474,142, and after a continuous decline in income, was making $362,487 as of 2019. This represented a decrease in income of approximately 23.5%. But as the referee recognized, plaintiff also was financially responsible for the parties' two daughters in 2011. He had no such legal obligations in 2019. So, although his income was less in 2019, the impact of that reduction was lessened. If plaintiff's reduction in income was to affect the amount of spousal support, then the amount reasonably would be lessened by a proportionate amount. Plaintiff's 2019 income represented an approximate 25% reduction from his 2011 income, when the judgment of divorce was entered. A commensurate 25% reduction in spousal support would result in a spousal support amount of $4,875 a month, which is substantially greater than the awarded amount of $3,350. Also, the referee highlighted that at the time the judgment of divorce was entered, the amount of spousal support awarded was 16.45% of plaintiff's income. Using that same percentage, 16.45% of plaintiff's 2019 income of $362,487 would be approximately $60,123 a year, or $5,010 a month. Again, this amount far exceeds the $3,350 that ultimately was awarded.

Likewise, we can find no equitable link between the reduction and defendant's needs. We recognize that because the referee stated multiple times in her opinion that $78,000 met defendant's needs, one could infer that the referee's goal was to award spousal support in an amount that, combined with defendant's income, totaled defendant's previous income of $78,000. The court assumed that defendant was working 1,600 hours a year, which would result in a yearly income of $30,000. Taking $78,000 and subtracting defendant's earned income of $30,000 yields a difference of $48,000. But dividing that $48,000 into monthly installments would result in $4,000 in monthly spousal support. Once again, this amount is substantially larger than the awarded amount of $3,350.

Without an explanation tying the factor analysis to the amount of the reduction, we are left with a firm conviction that the reduction in spousal support from $6,500 a month to $3,350 a month is not equitable. Essentially, defendant started making a "modest" income that likely did not exceed $30,000 a year and plaintiff's income, while lower than before, was still more than $350,000, resulting in plaintiff making in excess of 11 times the amount defendant did. Although the proper amount defendant should receive is not clear, the referee did not provide any meaningful analysis of how she arrived at the reduced amount of $3,350 a month, or explain why such a reduction was equitable, and no obvious analysis supports the award of $3,350 a month. It is possible that such an explanation exists. The onus is on the trial court to clarify its reasoning, to enable us to understand how it arrived at this $3,350 amount.

Finally, it was also inequitable to retroactively reduce the spousal support back to February 1, 2020. The court's disposition presumably was made, in part, on the basis of defendant making nearly $30,000 a year.[5] But defendant did not obtain that full-time position until September 2020. Until that time, she was a part-time employee making much less. To reduce spousal support on the basis that defendant is making full-time wages is one thing, but imposing that reduction retroactively to a time when defendant was not working full time is unnecessarily and inherently unfair. Although the referee gave no justification for the retroactive reduction of spousal support, the circuit court found no error because the retroactive modification of spousal support was authorized by MCL 552.603(2).[6] Although the trial court had discretion under MCL 552.603(2) to make a modification of spousal support retroactive, that does not mean that an exercise of that discretion would be equitable. As explained, the retroactive application in this instance was not equitable.

Because it is not clear from the record how the reduction in spousal support from $6,500 a month to $3,350 a month was fair or equitable, we vacate the order reducing spousal support and remand for the trial court to reevaluate the modification of spousal support, including any retroactive application. On remand, the trial court must explain the basis for any reduction and why the reduced amount is equitable.

## III. CONCLUSION

We vacate and remand for further proceedings consistent with this opinion. On remand, the trial court should address whether and to what extent defendant is entitled to attorney fees under MCR 3.602(D). The court should also explain how its reduction in spousal support is tied to its analysis of the *Berger* factors and how it is an equitable result. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett

---

[5] Again, because the referee did not provide any meaningful analysis or explanation, this Court must infer from the referee's other observations how she arrived at her dispositive rulings.

[6] MCL 552.603(2) provides, in pertinent part:

> Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support.