*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEIR EDWARD HORSFIELD,

        Plaintiff-Appellee,

v

KIMBERLY SUE HORSFIELD,

        Defendant-Appellant.

UNPUBLISHED
July 6, 2023

No. 361225
Washtenaw Circuit Court
LC No. 20-001979-DO

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant Kimberly Horsfield appeals as of right the trial court's judgment of divorce awarding spousal support. Defendant argues that the spousal support award was inadequate and that the trial court erred by denying her request for attorney fees. For the reasons stated in this opinion, we affirm the denial of attorney fees but reverse the spousal support award and remand for further proceedings.

## I. BACKGROUND

Defendant and plaintiff Keir Horsfield were married in 2000. They had one child during the marriage who is now an adult. Defendant had two children prior to the marriage, and plaintiff helped raised these children as his own. At the time the judgment of divorce was entered, the parties were both 49 years old. In December 2020, plaintiff filed a verified complaint for divorce, and defendant moved out of the marital home in January 2021. The parties' daughter, the daughter's boyfriend and their child lived in the marital home with plaintiff, paying $300 monthly rent. Plaintiff's step-son also lived in the marital home and paid $300 monthly rent. In February 2021, the trial court awarded defendant temporary spousal support in the amount of $1,500 per month and also ordered that she receive the $300 in monthly rent her son was paying plaintiff. The court reserved defendant's request for attorney fees.

By the time the bench trial began in December 2021, the parties had agreed on several aspects of the property division. Plaintiff would retain the marital home with defendant receiving one-half of the marital home's equity value, i.e., $92,651.46. Plaintiff's retirement accounts, which were valued over $800,000, would be divided equally excluding the premarital portions.

The primary remaining issues at the bench trial were spousal support and the division of personal property.

Plaintiff has worked as a mechanic at Ford Motor Company since 1992. He earned $126,477 in 2018, $111,270 in 2019, and $99,249 in 2020. Plaintiff testified that he has a base salary of $95,000 excluding overtime and that he had not been offered overtime since May 2021. According to plaintiff, he was left with $180 in discretionary income per month after paying $1500 in temporary spousal support.

Defendant testified that she and plaintiff agreed that it would be better if she did not work and instead stayed home to raise the children, but at some point she began working as a preschool teacher. Defendant had a mental health "breakdown" in 2013 after she learned that, prior to the marriage while the parties were dating, plaintiff had a sexual relationship with another woman who would later be the maid of honor at the parties' wedding. Plaintiff had previously denied such a relationship with this woman, but in 2013 he admitted to defendant that it had in fact occurred. Dr. Frank Pavlovcic, defendant's psychiatrist since 2013, has diagnosed her with post-traumatic stress disorder, bipolar II disorder, and generalized anxiety disorder. Defendant was hospitalized again for mental health issues in 2015. She subsequently underwent electroconvulsive therapy (ECT) treatments over the course of 2015 and 2016. Defendant returned to work in 2018 as a full-time employee for U of M Hospital, but soon resigned this position because of stress. Defendant found a new job as a part-time resident services associate for an assisted living facility, where she worked 16 to 24 hours per week and earned $15.30 per hour.

Defendant testified that she was currently living with her oldest daughter. She planned to buy a mobile home with her share of the marital home equity and to start her own retirement account with her share of plaintiff's retirement accounts. Defendant estimated that her anticipated monthly bills, not including health insurance or prescription costs, would amount to $3,000 per month. Defendant testified that she paid her attorney fees through a loan from her parents that she has to pay back. The court also heard testimony from defendant's psychiatrist, Dr. Pavlovcic, who recommended that defendant not work more than 24 hours per week out of concern that this would worsen her psychiatric symptoms and erode her current level of functioning.

Following the bench trial, the parties submitted proposed findings of fact and conclusions of law and informed the court of a significant change of circumstances. Defendant had obtained new part-time employment at Chelsea Hospital that offered health insurance, which significantly reduced the costs of her prescription medications to $253.30 per month. Her average hourly wage at the hospital is $15.70 per hour, and she works 24 hours per week.

The parties relied on a spousal support software to make their recommendations to the court. Each party used $19,593 as defendant's gross income. Defendant used a three-year average for plaintiff's gross income ($114,406), which produced a recommended spousal support award to defendant of $2,038 per month for 10 years. In contrast, plaintiff based his recommendations on his income being $92,631.[1] In addition, it was plaintiff's position that defendant could work more

---

[1] Plaintiff's November 30, 2022 paycheck stub showed that he had yearly gross income of $84,912.30. According to plaintiff, extrapolated for the entire year, his income would be $92,631.

than 24 hours per week, and he submitted three proposals based on the number of hours defendant worked. The "most equitable solution" according to plaintiff involved defendant working 32 hours per week, which resulted in plaintiff paying defendant $1,233 per month.

The trial court issued its findings and conclusions from the bench. The court recounted the parties' property division agreements as noted above. The parties also agreed to equalize their credit card debt, which resulted in plaintiff paying defendant $10,905.86 out of the home equity loan plaintiff would use to refinance the home. The trial court denied plaintiff's request for attorney fees, noting that the some of defendant's credit card debt included attorney fees. The court then divided the parties' personal property, awarding multiple vehicles and items to plaintiff and one vehicle to defendant. To equalize the personal property division, the trial court ordered plaintiff to pay defendant $8,000.

The court made certain findings before addressing spousal support. First, it concluded that it would use plaintiff's "basic full-time wage" as his income without including overtime. The court declined to use a three-year average for plaintiff's income, finding credible plaintiff's testimony that overtime was no longer being offered. The court also found credible Dr. Pavlovcic's testimony that defendant could not work full-time. After addressing the spousal support factors, the court then determined that it would award "step down alimony" by which defendant would receive $2,000 per month for the first two years, $1,500 per month for the next two years, and $1,000 per month for the six years thereafter. However, the court explained that the initially higher spousal support award was made to account for the $8,000 personal property equalization payment and that plaintiff would not be required to pay defendant the $8,000 as a lump sum. The court acknowledged that it was going "out a little bit on a limb" by conflating the property division and alimony in this manner. The judgment of divorce was entered on April 11, 2022, and provided that "[t]he personal property equalizer of $8,000 that would be due from Plaintiff to Defendant has been added into and considered in the alimony award herein."

## II. ANALYSIS

Defendant makes two arguments regarding her challenge to the spousal support award. First, she argues that the trial court's findings as to the relevant factors were clearly erroneous. Second, that the award is inequitable. While we find no reversible error as to the factors, we agree that the award is inequitable.[2]

## A. SPOUSAL SUPPORT FACTORS

In determining a proper spousal support award, the trial court must consider several specific factors and the overall equity of the award. "A trial court's decision to award spousal

---

[2] "Whether to award spousal support is in the trial court's discretion, and we review the trial court's award for an abuse of discretion." *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). We review "the trial court's findings of fact concerning spousal support for clear error." *Id*. The trial court's dispositional rulings, including "whether and how much alimony to award," "should be affirmed unless the appellate court is left with a firm conviction that the decision was inequitable." *Korth v Korth*, 256 Mich App 286, 288; 662 NW2d 111 (2003).

support is discretionary and should reflect what is just and reasonable under the circumstances of the case." *Loutts v Loutts*, 298 Mich App 21, 29-30; 826 NW2d 152 (2012). "The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). The following factors are relevant to spousal support determinations:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

Defendant contends that the trial court failed to justify its finding that plaintiff was favored under the first factor, i.e., "the past relations and conduct of the parties." *Olson*, 256 Mich App at 631. Defendant is correct that the trial court did not offer any elaboration on this factor when it found that it favored plaintiff. However, in its preliminary remarks, the trial court noted the undisputed testimony regarding defendant's history of opioid use. This refers to defendant's admission that she took money out of a joint account for a year to buy unprescribed Percocet "on the street" without telling plaintiff. The court was also concerned that defendant was being spiteful by requesting that she either receive the parties' tractor or that it be sold even though plaintiff still needed the tractor and defendant did not. We conclude that the trial court sufficiently justified its finding that the first factor favored plaintiff.

Defendant next argues that the trial court erred by finding that neither party was favored under the fourth factor, "the source and amount of property awarded to the parties." *Id*. Defendant argues that she should be favored under this factor because the trial court awarded more property to plaintiff as a result of converting the $8,000 personal property equalizer into the spousal support award. But $8,000 represented a relatively small amount of the property division. While more will be said about the trial court's decision to convert the equalization payment into alimony, the trial court did not clearly err by finding that this factor was neutral.

Defendant also challenges the trial court's finding regarding the seventh factor, "the present situation of the parties." *Id*. The court weighed this factor in plaintiff's favor because he has more expenses relating to their family than defendant considering that two of the parties' adult children live with him. The court also relied on this rationale in finding that plaintiff was favored under the tenth factor, "the prior standard of living of the parties and whether either is responsible for the support of others." *Id*.

Defendant argues that in weighing these factors the trial court failed to consider that the adult children pay plaintiff rent. But when asked whether the $600 in monthly rent paid by the

adult children "covers what they cost you," plaintiff answered: "I don't know. I just figured these kids are all adults. You can't live anywhere for free or 300 bucks. What does it cover, who knows, incidentals, gas in the car, fix a car." Although plaintiff's testimony is somewhat vague, a reasonable inference is that $600 per month does not cover the added expenses incurred by plaintiff relating to the adult children staying in his home. Accordingly, it cannot be said that the trial court clearly erred by weighing these factors in plaintiff's favor. For the same reasons, we conclude contrary to defendant's argument that the trial court did not clearly err by finding that the thirteenth factor, "the effect of cohabitation on a party's financial status," *id.*, was neutral and not in defendant's favor.

Defendant also argues that the trial court erred by focusing on the adult children living with plaintiff rather than the totality of the circumstances constituting the parties' present situation. However, through the other factors, the trial court considered all the relevant circumstances that favored defendant. That is, the court found that the length of the marriage, the parties' ability to work, plaintiff's ability to pay alimony, the needs of the parties, and the parties' health all favored defendant and an award of spousal support. We are therefore satisfied that the trial court considered the totality of the circumstances in weighing the spousal support factors.

Defendant also argues that the trial court incorrectly determined plaintiff's income. Defendant maintains that plaintiff's income should be determined using a three-year average pursuant to the Michigan Child Support Formula (MCSF). See 2021MCSF 2.01(E)(4)(d). Although it may be permissible for courts to consult the MCSF in calculating spousal support, defendant cites no caselaw requiring courts to do so. Indeed, spousal support is determined on a case-by-case basis, and "there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support . . . ." *Myland v Myland*, 290 Mich App 691, 699-700; 804 NW2d 124 (2010). Further, the trial court did not clearly err by declining to average plaintiff's income. Plaintiff testified that he was no longer receiving overtime and the trial court found this testimony credible. While the concern is that plaintiff voluntarily reduced his overtime to lower his income, the trial court found that COVID-19 and the state of the economy at that time supported the conclusion that overtime was not available. It was therefore reasonable for the trial court to not impute overtime income to plaintiff, which would have been the effect of averaging his income from the prior years when he received overtime.

## B. EQUITIES OF THE AWARD

"If the trial court's findings are not clearly erroneous, this Court must then decide whether the [support] ruling was fair and equitable in light of the facts." *Moore*, 242 Mich App at 654-655. Accordingly, we will now turn to defendant's argument that the spousal support award is inequitable and that the amount of spousal support awarded is inadequate to meet her needs.

Defendant is specifically concerned about the last six years of the award when she will receive $1,000 per month after two years of receiving $2,000 per month followed by two years of $1,500 per month. The trial court explained that the higher initial alimony would help "stabilize" defendant and that she would have to plan for "that rainy day" when her support is reduced and then ultimately ends. But the "rainy day" period referred to by the court seems to include the last six years of spousal support when defendant will receive $1,000 per month. An award that contemplates lean years lasting the majority of the spousal support duration does not meet the goal

-5-

of spousal support, which "is to balance the incomes and needs of the parties in a way that will not impoverish either party." *Id*. Plaintiff emphasizes that defendant was awarded substantial assets in the form of half the home equity value and half the marital retirement assets. However, defendant planned to use her share of the home equity to purchase a mobile home, and she planned to invest the retirement assets for her own retirement. The trial court hoped defendant would not have to regularly invade her "nest egg" of marital assets, but this distinct possibility is at odds with the well-settled principle that a spouse should not be required to "consume her capital to support herself." *Olson*, 256 Mich App at 633 (quotation marks and citation omitted).

This case is somewhat analogous to *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003), where the court awarded the husband $566,608 from the marital estate and the wife $570,775. The court also awarded the wife spousal support in the amount of $200 a week for five years. *Id*. at 422. This Court affirmed the property division but reversed the spousal support award:

> We conclude from these facts that the $200 a week award of spousal support was unreasonable, and that in fashioning its spousal support award, the trial court placed inordinate weight on the value of property awarded to defendant, and insufficient weight on the disparate incomes of the parties and the fact that the income-earning potential of the assets awarded to defendant was insufficient to offset this disparity. As in *Hanaway* [*v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995)], we find that "[g]iven the length of the marriage, the magnitude of the marital estate, and [plaintiff's] capital position and earning potential after the divorce, [defendant] should not be expected to consume her capital to support herself." [*Gates*, 256 Mich App at 437.]

In *Gates*, the husband's "gross annual income was at least three times that of [the wife's] gross income." *Id*. at 437. Here, plaintiff's income is about five times what defendant makes. This significant disparity in income does not support the trial court's decision to substantially reduce the monthly spousal support amount for the last six years of the 10-year award period.

Plaintiff argues that rehabilitative spousal support is the new norm. But in *Sullivan v Sullivan*, 175 Mich App 508; 438 NW2d 309 (1989), we concluded that a rehabilitative support award did not fit the facts of that case. There, the husband had a well-paying job and it was expected that his salary would increase; the wife was a stay-at-home mother who had worked as a waitress. The wife had "possible mental problems," including schizophrenia. *Id*. at 513. The trial court "determined that there was an ability on the part of defendant to continue to work as a waitress at least part-time and subsequently awarded defendant adjustment alimony to assist her in 'getting things together.' " We reversed the "rehabilitative alimony" award of $115 per week and held that it was to continue on a permanent basis, reasoning "that there is serious doubt whether defendant, in spite of her best efforts, will be able to fully support herself at the end of the four-year period and that it would be inequitable to eliminate alimony as a source of support in this case." *Id*. at 514.

Similarly, in this case, it is doubtful that defendant will be in a better position to support herself when her spousal support is reduced to $1,000 per month for the last six years of the award. Defendant was unable to work full-time in 2018 and while she started nursing school in 2021, she

was unable to continue due to stress. Dr. Pavlovcic, who the trial court found credible, was concerned about defendant's functioning eroding due to her psychiatric symptoms if she attempted to work more than 24 hours per weeks.[3] Thus, it appears highly unlikely that defendant will be able to increase her income. Accordingly, a four-year stabilization or rehabilitation period is not applicable to the facts of this case.

Defendant maintains that $1,000 per month is insufficient to meet her needs. At trial, she anticipated that her monthly expenses would be about $3,000 aside from medical expenses. Following her new employment, she estimates that her medications will cost $253.30 per month. Defendant also testified that she "bring[s] home about $1,000 a month." We acknowledge that the trial court was not required to accept defendant's monthly estimations as true. Nonetheless, even if defendant's expenses are less than what she anticipated, she still may be left with a substantial monthly shortfall. Further, there is no dispute that plaintiff can pay more than $1,000 in spousal support. Considering the length of the marriage, the disparity in income, and defendant's needs and mental health issues, we are left with a firm conviction that the final six years of the spousal support award is not just and reasonable.

Our decision to remand for redetermination of spousal support is buttressed by our conclusion that the trial court erred in its handling of the $8,000 personal property equalization payment, which defendant also challenges on appeal. We would have no serious qualms about the trial court's decision on this matter had the trial court first determined an appropriate amount of spousal support and then added $8,000 (apportioned over time) to that award. However, the trial court expressly stated that it was not taking this approach, i.e., the court was "not ordering that [plaintiff] owes [defendant] that $8,000 spread over two years." Instead, the court effectively negated the $8,000 payment owed to defendant in exchange for four years of higher alimony. In doing so, the court never arrived at a baseline figure of spousal support that was based on the parties' incomes and needs. Indeed, the trial court stated that it was awarding four years of higher alimony in part to avoid plaintiff having to make another lump-sum payment to defendant. This was a valid consideration, but by including the $8,000 in the award before determining the necessary amount of support the trial court effectively precluded meaningfully appellate review of the award, as we are left to wonder how exactly the award was inflated by conversion of the equalization payment into spousal support. On remand, the trial court must first determine a proper spousal support award under the governing standards *before* adding the $8,000 to the award if the trial court again wishes to avoid plaintiff making a lump sump payment to defendant in that amount.

## B. ATTORNEY FEES

---

[3] The spousal support recommendation offered by the parties that most comports with the trial court's findings was plaintiff's proposal where defendant worked 24 hours per week and plaintiff's annual income was about $92,000. Under this scenario, the spousal support software recommended that defendant receive $1,495 per month for 10 years. This amounts to a total award of $179,400, about $23,000 more than the total amount awarded to defendant by the trial court.

Defendant also argues that the trial court erred by denying her request for attorney fees under MCR 3.206(D)(2)(a). We conclude that the trial court did not abuse its discretion by denying an award of attorney fees.[4]

MCR 3.206(D) provides in pertinent part:

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.]

"Attorney fees in a divorce action may be awarded when a party needs financial assistance to prosecute or defend the suit." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008) (quotation marks and citation omitted). "It is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Gates*, 256 Mich App at 438.

The trial court indicated that it was denying defendant's request for attorney fees on the basis that defendant's credit card debt included attorney fees and the parties had reached an agreement whereby plaintiff would pay defendant $10,905.86 to equalize the parties' credit card debt. Defendant concedes on appeal that some of her credit card debt included attorney fees. It therefore follows that, through the credit card equalization payment, plaintiff has in fact paid some of defendant's attorney fees. Defendant asserts that the rest of her attorney fees were paid through family loans, but she does not offer a breakdown of how much of the fees were paid through credit card versus loans through family members, which may be forgiven or at least not strictly enforced. While defendant asserts that she has paid her attorney $19,500 in fees, the only record evidence regarding the amount of defendant's fees was an invoice dated December 1, 2021, showing payment of a $10,000 retainer. Given the sparse record on this issue, defendant has not shown that the trial court abused its discretion by denying her request for attorney fees.

Reversed in part, affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

---

[4] "We review a trial court's decision whether to award attorney fees for an abuse of discretion, the trial court's findings of fact for clear error, and any questions of law de novo." *Loutts*, 298 Mich App at 24.